MATTER OF AREGUILLIN

In Deportation Proceedings

A-22365591

*Decided by Board April 7, 1980*

(1) An alien who physically presents herself for questioning and makes no knowing false claim to citizenship is "inspected" even though she volunteers no information and is asked no questions by the immigration authorities, and has satisfied the "inspection and admission" requirement of section 245 of the Immigration and Nationality Act, 8 U.S.C. 1255.

(2) "Admission" occurs when the inspecting officer communicates to the applicant that he has determined that the applicant is not inadmissible. That communication has taken place when the inspector permits the applicant to pass through the port of entry.

(3) The respondent bears the burden of proving that she in fact presented herself for inspection as an element of establishing eligibility for adjustment of status.

(4) Where no finding was made below as to credibility and sufficiency of evidence supporting respondent's claim that she was a passenger in a car permitted to proceed into the United States after the driver alone had been questioned by the inspecting officer, and hence inspected and admitted within the contemplation of the law, Board remanded case to immigration judge.

(5) Immediate relatives and other aliens exempted from the numerical limitations of the Act are not within the purview of the injunction entered in *Silva v. Levi*, No. 76-C4268 (N.D. Ill. March 22, 1977; as amended April 1, 1977). *See* final judgment order entered in *Silva v. Bell*, No. 76-C4268 (N.D. Ill. October 10, 1978).

CHARGE:
Order: Act of 1952—Sec. 241(a)(1) and 212(a)(20) [8 U.S.C. 1251(a)(1)] and 8 U.S.C. 1182(a)(20)]—No valid visa

ON BEHALF OF RESPONDENT: Laurier B. McDonald, Esquire
P.O. Drawer 54
Edinburg, Texas 78539

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

In a decision dated January 25, 1978, an immigration judge found the respondent deportable as charged on the basis of her concessions at the hearing, denied her application for adjustment of status pursuant to section 245 of the Immigration and Nationality Act, 8 U.S.C. 1255, but

granted her the privilege of voluntary departure in lieu of deportation. The respondent has appealed from the denial of relief under section 245. The appeal will be sustained and the record remanded for further proceedings before the immigration judge.

The respondent, a 45-year-old native and citizen of Mexico, claims eligibility for adjustment on the basis of her status as the beneficiary of an approved immediate relative visa petition which had been filed on her behalf by her United States citizen spouse. The immigration judge found that the respondent had not been inspected and admitted at the time of her last entry into the United States and therefore has not satisfied the statutory requirements for the relief sought under section 245 of the Act.[1]

The respondent offered the following account with respect to the entry in issue. The respondent testified that she crossed the Mexican-United States border in a car with two couples and another woman. She had no travel or entry documents in her possession at the time. The respondent stated that the immigration officer at the port of entry looked inside the car, asked the driver a question,[2] then permitted the car and its occupants to proceed into the United States. She testified that she personally was asked no questions by the immigration officer; she apparently volunteered no information.

The immigration judge concluded as a matter of law that the manner of entry described by the respondent does not establish an inspection and admission for purposes of section 245 inasmuch as the respondent was in fact inadmissible for lack of documentation at the time she presented herself for inspection. The immigration judge sought to distinguish the well-established line of cases which holds that an alien who physically presents himself for questioning is "inspected" even though he volunteers no information and is asked no questions by the immigration authorities. See Matter of F—, 1 I&N Dec. 90 (BIA 1941; A.G. 1941); Matter of F—, 1 I&N Dec. 343 (BIA 1942); Matter of G—, 3 I&N Dec. 136 (BIA 1948).[3] He noted that the burden was on the Government in the foregoing cases to show, as part of its burden of establishing deportability, that inspection had not occurred

[1] Section 245(a) of the Act states as an eligibility requirement that the alien have been "inspected and admitted or paroled into the United States. . . ."

[2] The respondent stated that she "think[s]" the driver was asked where he was from; at several points in the proceedings the respondent, who testified through a Spanish interpreter, indicated that she did not comprehend the verbal exchange between the immigration inspector and the driver since they spoke English.

[3] That general rule notwithstanding, an alien who gains admission to the United States upon a knowing false claim to citizenship has not been "inspected and admitted." See Reid v. United States, 420 U.S. 619 (1975); Matter of F—, 9 I&N Dec. 54 (R.C. 1960); Matter of S—, 9 I&N Dec. 599 (BIA 1962); Matter of Woo, 11 I&N Dec. 706 (BIA 1966); Matter of Wong, 12 I&N Dec. 733 (BIA 1968).

while in the present case, the respondent bears the burden of proving she had been inspected as an element of establishing her eligibility for adjustment.

We agree with the respondent that the immigration judge's distinction is without a difference in determining what constitutes "inspection and admission." We find no basis for concluding that Congress, in first imposing the requirement that an alien be "inspected and admitted" or paroled into the United States as a condition for establishing eligibility for relief under section 245,[4] intended to depart from the long-settled construction of that term in favor of the interpretation adopted by the immigration judge, i.e., that only an alien who has been "lawfully or legally" admitted to the United States may qualify for adjustment of status as one who has been inspected and admitted.[5] Regardless of which party bears the burden of establishing the presence or absence of an inspection and admission, that which must be proved remains unchanged. The rule that an alien has not entered without inspection when he presented himself for inspection and made no knowing false claim to citizenship applies in determining whether an alien has satisfied the inspection and admission requirement of section 245 of the Act.

We are satisfied that if the facts are found to be as claimed by the respondent, she was inspected and admitted[6] within the contemplation of the law. The respondent, however, bears the burden of proving that she did, in fact, present herself for inspection. Inasmuch as the immigration judge found the respondent ineligible as a matter of law for adjustment under section 245, he made no finding with respect to the credibility or sufficiency of the evidence offered, which at present consists of the respondent's uncorroborated testimony. We shall accordingly remand the record to the immigration judge for further proceedings, during which the respondent should be accorded an opportunity to offer any additional evidence she may be able to produce

---

[4] Act of July 14, 1960, 74 Stat. 505.

[5] In 1952, Congress provided for adjustment of status, under prescribed conditions, to "an alien who was lawfully admitted to the United States as a bona fide nonimmigrant. . . ." Section 245 was subsequently amended in 1958 and in 1960 to eliminate that restrictive terminology. The immigration judge's interpretation would in effect reenact the superseded law. Moreover, under the rationale set forth by the immigration judge, any alien found deportable under section 241(a)(1) of the Act, 8 U.S.C. 1251(a)(1), for having been excludable at the time of entry presumably would likewise be precluded from establishing statutory eligibility for section 245 relief for failure to satisfy the "inspection and admission" requirement.

[6] "Admission" occurs when the inspecting officer communicates to the applicant that he has determined that the applicant is not inadmissible. Matter of V—Q—, 9 I&N Dec. 78 (BIA 1960). That communication has taken place when the inspector permits the applicant to pass through the port of entry.

310

in support of her assertions, and for the entry of a new decision. In the event the decision on remand is again adverse to the respondent, we direct that the case be certified back to the Board for review.

Finally, the respondent for the first time on appeal argues that termination of these proceedings is required by the Temporary Restraining Order entered in *Silva v. Levi*, No. 76-C4268 (N.D. Ill. March 22, 1977; as amended April 1, 1977), which enjoins the Service from initiating, continuing, or concluding any effort to expel an alien within the plaintiff class, and further enjoins the Board from dismissing an alien's appeal or sustaining a Service appeal in a deportation case involving such alien, unless it has been determined that the alien is ineligible to receive an immigrant visa or that his continued presence in this country is contrary to the national interest or security. *See* the final judgment order entered in *Silva v. Bell*, No. 76-C4268 (N.D. Ill. October 10, 1978).[7] We find no merit in her contention.

The class of aliens protected by the *Silva* injunction is defined as follows:

> ... natives of independent countries of the Western Hemisphere who have priority dates for the issuance of immigrant visas between July 1, 1968 and December 31, 1976, whose priority dates have not been reached for processing or who have not been called for final views.

*Silva v. Bell, supra,* "Findings of Fact," Para. 9. The protected class is comprised of aliens who should have been issued one of 144,999 visa numbers which were assigned to Cuban refugees and wrongfully charged against the annual Western Hemisphere quota between July 1968 and October 1976. The respondent, as an immediate relative not subject to the numerical limitations of the Act, did not receive a priority date for the allocation of a visa number and was in no manner affected by the unlawful charging policy which the *Silva* order seeks to remedy. We conclude that immediate relatives and other aliens exempted from the numerical limitations of the Act are not within the purview of the *Silva* injunction. The following orders will be entered.

ORDER: The appeal is sustained and the record is remanded to the immigration judge for further proceedings consistent with the foregoing opinion and the entry of a new decision.

FURTHER ORDER: In the event the decision on remand is adverse to the respondent, the record shall be certified to the Board for review.

---

[7] The Seventh Circuit Court of Appeals overruled this decision as it relates to the allocation of visa numbers. *Silva v. Bell*, 605 F.2d 978 (7 Cir. 1979).